

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
| --- | --- | --- |
| RAUL RIVAS, | | No. 08-14-00010-CV |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 41st District Court |
| | § | |
| SOUTHWEST KEY PROGRAMS, INC., | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 2012DCV05932) |
| | § | |

**O P I N I O N**

This wrongful discharge case asks a presumably simple question: when was Raul Rivas terminated from his job (or at least when did he know he would be terminated)? Documents from the Texas Workforce Commission (TWC) suggest he claimed to have been fired on September 19, 2010, which would make his suit untimely. His affidavit submitted in response to a motion for summary judgment claims that he was not terminated until September 24, 2010, which if true, might make his suit timely. The trial court granted summary judgment, presumably crediting the TWC file entries. Based on the state of the record, we reverse and remand the case.

## FACTUAL SUMMARY

On September 24, 2012, Rivas filed suit against Southwest Key Programs, Inc. (Southwest Key) under Section 451.001 of the Texas Labor Code. TEX.LAB.CODE ANN. § 451.001 (West 2015). The suit maintained that Rivas was hired in January 2003 and at some time thereafter was injured on the job. Rivas alleges that in connection with this injury, he filed and pursued a work injury claim under the Texas Worker's Compensation Act. He contends that because he did so, he was discharged from his employment "and/or discriminated against . . . on or about September 24, 2010." He also alleges that he suffered from a "hostile work environment" because of his on the job injury. His pleading is devoid of any specific factual allegations explaining the basis for these legal theories, but the absence of specific factual allegations was never raised below.

Southwest Key answered, and shortly thereafter, filed a motion for summary judgment contending that the suit was barred by the applicable two-year statute of limitations. Southwest Key proved up three documents that it had received from the TWC appearing to indicate that Rivas filed a claim for unemployment benefits on September 19, 2010.

About eight months later, Southwest Key filed an Amended Motion for Summary Judgment, also asserting limitations, but this time supported by the file from the TWC which was proved up as an official record. That file contains a "Benefits-Initial Claims" report pertaining to Rivas which shows a "claim date" of September 19, 2010. Another page contains references to four "Fact Finding Statements." The first is labeled as occurring at 9:05 a.m. on September 21, 2010 and attributes this statement to Rivas: "I was fired because I was told that I was only to have 10 children under my supervision. I had 12 children that day and I was told I had not met

2

ratio." Another fact finding statement attributed to Rivas on October 6, 2010 notes that that there was no time lapse between the "incident" and the "discharge."

Rivas responded to the amended motion for summary judgment with his own affidavit that claimed he was injured on the job on April 4, 2010, and was off work until August 24, 2010. Upon his return, he claims he was subjected to a "negative attitude and hard time" because of the injury and having filed the claim. He offered no specific details of what this referred to other than an assistant director told others not to talk to him and he was denied treatment. He also swore: "I was suspended on or about September 19, 2010, pending an investigation. I was not fired." He was called the next day and was told his suspension would be until September 24, and "I asked Adriana if I was fired, and I was told no." On September 24, he showed up for work and was told he was fired. "The day of my termination is September 24, 2010 and I am sure about it." Also attached to the response was a payment stub from Liberty Mutual for what appear to be payments for worker's compensation benefits.

Southwest Key filed various objections to Rivas' affidavit. We find nothing in the record to show those objections were ever ruled upon. The trial court granted the amended motion for summary judgment on December 18, 2013. Rivas brings three issues on appeal, all of which contend the trial court erred in granting the summary judgment. In various ways, he contends there that there is a genuine issue of material of fact as to the accrual date, and when he knew or should have known of the termination.

### STANDARD OF REVIEW

The standard of review for a traditional summary judgment under TEX.R.CIV.P. 166a(c) is well established. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). The moving party carries the burden of showing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Diversicare General Partner, Inc.*

*v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hospital, Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Tranter v. Duemling*, 129 S.W.3d 257, 260 (Tex.App.--El Paso 2004, no pet.). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Reese*, 148 S.W.3d at 99. We review the grant or denial of a traditional motion for summary judgment *de novo. Valence Operating Company v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

Southwest Key moved for summary judgment on its affirmative defense of limitations and therefore carried the burden of conclusively establishing that defense. *KPMG Peat Marwick v. Harrison County Housing Finance Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *Munoz v. Gulf Oil Co.*, 693 S.W.2d 372, 373 (Tex. 1984). It was required to conclusively prove when Rivas' cause of action accrued. *Id.* An issue is conclusively proven if reasonable minds would necessarily agree regarding the conclusion to be reached from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors and Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982).

### ACCRUAL DATE FOR SECTION 451.001 CLAIMS

Rivas asserted he was terminated and subjected to a hostile work environment because he exercised his rights to pursue a work related injury claim, all in violation of Section 451.001. A wrongful termination claim under Section 451.001 must be filed within two years after the cause of action accrues. *Johnson & Johnson Medical, Inc. v. Sanchez*, 924 S.W.2d 925, 927 (Tex. 1995)(interpreting predecessor statute). Such a claim accrues when the worker receives unequivocal notice of the termination or when a reasonable person should have known of the termination. *Id*. at 928.

4

A short visit to the facts in *Sanchez* is instructive. Ms. Sanchez was injured in April 1987 and by November 1987, she was placed on indefinite medical leave with recall rights. *Id.* She contended that over the years, she called and was told several times that no jobs were available. *Id.* Finally in April 1991, she filed a suit asserting a claim for common law fraud and discrimination under the predecessor statute to Section 451.001. *Id.*[1] The employer obtained a summary judgment on the predecessor Section 451.001 claim based on limitations, contending that the indefinite medical leave in 1987 was the same as a final termination. *Id*. at 928. The Texas Supreme Court, however, found that the meaning of an indefinite medical leave under the company's policies and collective bargaining agreement was ambiguous. *Id*. This ambiguity created a fact issue as to when the employee received unequivocal notice of termination, or a reasonable person would have believed themselves to have been terminated. *Id*. at 930.

*Sanchez* preserved an important facet of existing law by reiterating the holding in *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490 (Tex. 1996). *DeMoranville* holds that an employment discrimination claim accrues when the discrimination occurs, and not when the effects of that discrimination are felt. *Id*. at 493. In *DeMoranville*, the plaintiff took a medical leave of absence because of stress allegedly caused by a hostile work environment. *Id*. at 492. She was told that she would be fired if the leave lasted longer than a year and approximately one year later, the plaintiff was formally terminated. *Id*. Because the discriminatory employment decision occurred with the leave of absence itself, her claim accrued then, and not a year later when the formal termination ensued. *Id*. at 493. *DeMoranville* looked to *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) which holds that "the

---

[1] Act of May 7, 1971, 62nd Leg., R.S., ch. 115, §§ 1-3, 1971 TEX.GEN.LAWS 884-85 (repealed 1993)(current version at TEX.LAB.CODE ANN. §§ 451.001-.003).

proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become most painful." 449 U.S. at 258, 101 S.Ct. at 504.

But these cases are very fact specific. In *Sanchez*, the plaintiff avoided summary judgment because she was not alleging that the earlier indefinite medical layoff in 1987 was the basis of her claim. The discriminatory event was her termination, the actual date of which was in dispute. Conversely, the plaintiff in *DeMoranville* was suing over the decision made a year before the termination, and which made the actual termination a mere formality. And in *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128 (5th Cir. 1992) the claim was found time barred based on the date that a leave of absence began when other facts, such as the plaintiff filing for unemployment compensation, and the testimony of two employer witnesses, indicated that the plaintiff was terminated as of a particular date. *Id*. at 136.

Rivas also asserts a claim for a hostile work environment, a theory endorsed by this court in *Garcia v. Levi Strauss & Co.*, 85 S.W.3d 362, 369 (Tex.App.--El Paso 2002, no pet.)(recognizing hostile workplace theory under Section 451.001). Under Title VII, a hostile-work-environment claim is generally composed of a series of separate acts that collectively constitute one "unlawful employment practice." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 S.Ct. 2061, 2073, 153 L.Ed2d 106 (2002). For limitation purposes, it does not matter that some of the specific acts creating the hostile work environment fall outside the statutory time period, "[p]rovided that an act contributing to the claim occurs within the filing period . . . . *Morgan*, 536 U.S. at 117 (while plaintiff cannot recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period, "behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period"); *City*

6

*of El Paso v. Marquez*, 380 S.W.3d 335, 343-44 (Tex.App.--El Paso 2012, no pet.)(recognizing "continuing violation doctrine" for hostile work environment in National Origin claim); *Bartosh v. Sam Houston State University*, 259 S.W.3d 317, 324 (Tex.App.--Texarkana 2008, pet. denied)(recognizing *Morgan* principle but finding neither of the events occurring within the limitation period could be considered harassment); *Soto v. El Paso Natural Gas Co.*, 942 S.W.2d 671, 677 (Tex.App.--El Paso 1997, writ denied)(acts occurring before 180 day or two year limitations period may be considered as evidence in sexual harassment claim, but not as basis for legal redress). The termination itself, however, would not qualify as a predicate for the hostile work environment claim. *Bartosh*, 259 S.W.3d at 324.

## ANALYSIS

The fact specific nature of the cases in this arena is the nub of the problem here. There is almost no factual development of the claims which were pled below. Rivas alleges only that he was discharged "and/or discriminated against . . . on or about September 24, 2010" in violation of the Texas Labor Code. He appends an affidavit to his summary judgment response contending that he was not terminated until September 24, 2010 and had in fact been told the opposite prior to that date. It is not even clear to us if the suspension on September 17 is a part of his claim in this lawsuit. While Southwest Key introduced contrary evidence about when Rivas was terminated, or at least when he knew he would be terminated, the summary judgment standard mandates that we must take the non-movant's evidence as true in deciding whether there is a disputed issue of material fact. *Reese*, 148 S.W.3d at 99; *Duemling*, 129 S.W.3d at 260.

We believe this case is controlled by *Randall v. Dallas Power & Light Co.*, 752 S.W.2d 4 (Tex. 1988) that held a trial court could not pick and choose between seemingly conflicting

7

assertions in the summary judgment record. In that case, the plaintiff swore in an affidavit that the defendant made a representation about a future event; a later deposition elicited testimony from the plaintiff that he could not recall any promises about future events. *Id*. at 5. The trial court granted summary judgment which was affirmed by the court of appeals, based on the deposition answer. *Id*. The Texas Supreme Court reversed, finding that there was a fact issue. *Id*; *see also Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557, 562 (1962)("If conflicting inferences may be drawn from the deposition and from the affidavit of the same party, a fact issue is presented. It is not the purpose of the summary judgment rule to provide either a trial by deposition or a trial by affidavit, but rather to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine issue of fact."); *Bastida v. Aznaran*, 444 S.W.3d 98, 108 (Tex.App.--Dallas 2014, no pet.)(conflict between affidavit and response to request for admission created fact issues); *Hunicke v. Seafarers International Union*, No. 14-12-00199-CV, 2013 WL 2444634, at *8-9 (Tex.App.-- Houston [14th Dist.] June 4, 2013, pet. denied)(mem. op.)(affidavit created fact issue by contradicted prior statement in response to earlier motion for summary judgment on statute of limitations as to when hostile work environment actions took place); *Allen v. Roddis Lumber & Veneer Co*., 796 S.W.2d 758, 760 (Tex.App.--Corpus Christi 1990, writ denied)(contradiction between deposition and affidavit about when plaintiff knew of formaldehyde risk created fact issue in summary judgment context).[2]

---

[2] Some cases coming after *Randall* have resolved conflicts between affidavits and prior sworn testimony under the sham affidavit rule. *E.g. Cantu v. Peacher*, 53 S.W.3d 5, 10 (Tex.App.--San Antonio 2001, pet. denied); *Farroux v. Denny's Restaurants, Inc*., 962 S.W.2d 108, 111 (Tex.App.--Houston [1st Dist.] 1997, no pet.). This court has also applied the sham affidavit doctrine. *See Fred Loya Ins. Agency, Inc. v. Cohen*, 446 S.W.3d 913, 927 (Tex.App.-- El Paso 2014, pet. denied)(affirming trial court's finding that particular claim in affidavit contradicted earlier deposition testimony on whether term of agreement was definite or indefinite). The doctrine has been applied outside of the pure affidavit verse deposition context. *Herrera v. CTS Corp*., 183 F.Supp.2d 921, 929 (S.D.Tex. 2002)(plaintiff's affidavit which conflicted with sworn statements in application for Social Security Disability Insurance). It has been applied in the specific context of an affidavit attempting to create a fact issue for limitations

Thus we are left with an affidavit that appears to conflict with an entry in an official record of the TWC. We are perhaps more inclined to apply *Randall* in this context because the TWC record does not contain any sworn statement from Rivas, nor is there a sponsoring witness to explain the meaning of all the entries on the record.

Southwest Key also argues that the summary judgment can be sustained based on the holding of *Specialty Retailers, Inc. v. DeMoranville* that the final date for termination does not always control the accrual date. It argues that the suspension on September 17, in conjunction with the admissions by Rivas in the TWC file, are sufficient to defeat any fact issue. Our concern with this reasoning returns back to the sparse record before us, and the affidavit filed by Rivas. In the affidavit, he states, "I was suspended on or about September 19, 2010, pending an investigation. I was not fired. I was called on September 20, 2010 by Adrian Saenz. I was told that my suspension that my suspension [sic] would be until the 24th of September. I asked Adriana if I was fired, and I was told no." It is not clear to us how the suspension itself relates, if at all, to the claimed discrimination. There is at least a fact issue on this record as to whether the suspension is tied to the termination decision or not.

The amended motion for summary judgment did not specifically address the hostile work environment claim. *See Chessher v. Southwestern Bell Telephone Co*., 658 S.W.2d 563 (Tex. 1983)(summary judgment motion must address every claim raised to obtain dismissal of all claims). But neither did the Rivas' response take issue with that omission, and neither party on appeal addresses in any significant way the hostile work environment claim. Perhaps this is

purposes in a wrongful discharge suit. *Thurman v. Sears, Roebuck & Co*., 952 F.2d 128, 136 n.23 (5th Cir. 1992)(applying sham affidavit rule in dispute over when plaintiff was told he was terminated). But we cannot consider its application here because the sham affidavit rule is an attack on the form of the affidavit, and not its substance, such that it must be first addressed by the trial court. *Hogan v. J. Higgins Trucking, Inc.*, 197 S.W.3d 879, 883 (Tex.App.--Dallas 2006, no pet.); *Wolfe v. Devon Energy Production Co., LP*, 382 S.W.3d 434, 454-53 (Tex.App.--Waco 2012, pet. denied); David F. Johnson , Joseph P. Regan, *The Competency of the Sham Affidavit as Summary Judgment Proof in Texas*, 40 St. Mary's L.J. 205, 259 (2008).

understandable given that the claim comprises a single sentence in the Original Petition, and as noted above, Rivas would be required to prove a distinct action other than the termination, that occurred on September 24, 2010, which was part of the hostile work environment claim. *Morgan*, 536 U.S. at 117, 104, 122 S.Ct. at 2068. Inasmuch as we reverse the summary judgment on the termination claim, we also reverse as to the hostile work environment claim because Southwest Key failed to prove that there was no genuine issue of material fact that no event took place on September 24, 2010 germane to the hostile work environment claim.

Based on the record before us, we sustain Issues One, Two, and Three to the extent that there is a genuine issue of material fact on the date of accrual for the termination and hostile work environment claim. We reverse and remand for further proceedings.

November 3, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, J., and Chew, C.J. (Senior)
Chew, C.J. (Senior), sitting by assignment

10